UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEREMY GALLANT,
    Plaintiff,

vs

MR. HOLDREN, *et al.*,
    Defendants.

Case No. 1:16-cv-383

Dlott, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

## I.    Introduction

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), brings this civil rights action under 42 U.S.C. § 1983 against SOCF Health and Safety Coordinator Greg Holdren, Deputy Warden William Cool, Deputy Warden of Special Services Anthony Cadogan, Institution Inspector Linnea Mahlman, and John and Jane Doe defendants 1-10.[1] (Doc. 3). Plaintiff was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 on his claim that defendants were deliberately indifferent to his safety in violation of the Eighth Amendment in connection with a sewage leak that occurred on February 13, 2016. (Docs. 2, 6). This matter is before the Court on defendants' motion for summary judgment (Doc. 65) and supplemental exhibits (Doc. 80), plaintiff's motion for leave to file a response that exceeds the 20-page limit (Doc. 84) and response in opposition to defendants' motion for summary judgment (Doc. 85), and defendants' reply memorandum (Doc. 86).

Plaintiff has also submitted a sur-reply. (Doc. 87). However, plaintiff did not seek leave of Court before filing the sur-reply and has not shown good cause for the filing as required under S.D. Ohio Civ. R. 7.2(a)(2). The sur-reply does not address any new facts or

---

[1] The John/Jane Doe defendants have not been served and therefore are not before the Court.

legal arguments raised in the reply memorandum. The Court therefore has not considered the sur-reply in issuing this Report and Recommendation.

Plaintiff's request for leave to exceed the page limit for its response to the summary judgment motion (Doc. 84) is granted.

## II. Summary judgment standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A grant of summary judgment is proper if "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

2

*Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)). *See also Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp.2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

### III.    Facts

Plaintiff and defendants agree on some facts surrounding the sewage overflow and its impact on plaintiff and disagree on many other facts. The pertinent facts and areas of disagreement are set forth below.

3

*i.      The sewage overflow incident*

It is undisputed that at around 4:00 a.m. on February 13, 2016, a sewage backup occurred in the J-4 housing unit at SOCF where plaintiff was housed. (Doc. 85-1 at 1, Exh. A-1, Holdren Incident Report). Both plaintiff and defendants have submitted photograph clips from video footage which document the sewage overflow in the J-4 unit. (Doc. 65-2, Exh. B; Doc. 85-2, Exhs. C1-C23). Plaintiff asserts in his verified complaint that "a significant amount of bio-hazard contaminates and raw sewage . . . pour[ed] out of the shower drains and prisoners (sic) toilets" in the J-4 housing unit for approximately ten hours from 4:00 a.m. until 1:00 or 2:00 p.m. (Doc. 3 at 8). Plaintiff asserts that raw sewage flooded onto the unit, "completely submerging the entire J-4 living quarters in toxic liquid." (*Id.* at 9). Plaintiff states that these conditions persisted for about 16 hours and that inmates in the housing unit were forced to consume all meals "while residing in standing raw sewage and bio-hazard contaminates," which placed them at grave risk. (*Id.*).

Defendants contend that plaintiff has exaggerated the severity of the sewage overflow, and they rely on photograph clips from SOCF video footage to support their position. (Doc. 65 at 6, citing Doc. 65-2, Exh. B). Defendants contend that the clips show correction officers who are not wearing boots "walking on a wet - - *not* flooded floor." (*Id.*). Plaintiff asserts that the video clips document the unsanitary and hazardous conditions by showing that the walkway of the range was wet with raw sewage water; officers walked on the wet, contaminated floor; and breakfast was served by porters who also walked on the wet and contaminated floor. (Doc. 85-2 at 1-3, Exhs. C1-23).

4

ii.     *The condition of plaintiff's cell*

The parties dispute whether plaintiff's cell was impacted by the sewage overflow. Defendants contend that plaintiff had blocked his cell door and his cell remained dry for the duration of the sewage overflow. (Doc. 65 at 3). To support their contention, defendants have submitted the affidavit of Lieutenant Robert Setty. (Doc. 65-1, Exh. A). Setty states in his affidavit that on February 13, 2016, he was notified that the range was experiencing a flooding issue due to a clogged drain. (*Id.*, ¶ 6). According to Setty, porters were immediately brought in begin cleaning the range, the drain was unclogged, and the system began draining properly, at which point the range was then fully cleaned. (*Id.*, ¶¶ 7, 8). He states that when he arrived at SOCF on the morning of the incident, he noticed that porters and SOCF staff were mopping and cleaning the range where plaintiff was located. (*Id.*, ¶ 9). He recalled speaking to inmates pertaining to potential grievances. (*Id.*, ¶ 10). He specifically recalled speaking to plaintiff and asking him what his complaint was because plaintiff "had blocked the bottom of his cell preventing water from entering." (*Id.*, ¶ 11). Setty told plaintiff that his cell was dry and he had "blocked the advance of water." (*Id.*). Setty states in his affidavit that plaintiff's "cell was not affected by any water or overflow" and "now [sic] water intrusion occurred in [plaintiff's] cell." (*Id.*, ¶ 12).

Defendant Mahlman issued a Disposition of Grievance in response to a complaint plaintiff filed on February 22, 2016 about the sewage overflow. (Doc. 65-4, Exh. D at 2). She noted that plaintiff complained he was "subjected to [a] bio hazard swamp until 8 p.m. and [was] forced to consume all 3 meals while submerged in raw sewage and [he] allege[d] nothing has been done to properly cleanse J4 cells." (*Id.*). Mahlman stated that she had reviewed all DVR

5

footage for J-4 from February 13, 2016 and had spoken with Setty, who was on the range and talked with the inmates due to the showers flooding. (*Id*.). She stated that she "was informed that [plaintiff's] cell was the only one that was dry and not affected." (*Id*.). She also stated that maintenance was called and later came and fixed the problem within an hour, inmate porters cleaned with "wet vac's," and "256"[2] (a disinfectant) was used for cleaning. (*Id*.). Mahlman nonetheless resolved the grievance as "GRANTED - Problem noted" and made a report and recommendation to the warden in which she concluded that the J-4 shift officers on duty the date of the sewage overflow "failed to document the flood in J4 by filing DRC 1000's." (Doc. 85-1 at 3, Exh. A-3- Report of Inspector to Managing Officer).

Plaintiff disputes defendants' allegation that his cell remained dry and was not breached by raw sewage. Plaintiff alleges in his response to the motion for summary judgment that he "was forced to battle bio-hazard sewage from both the range and the toilet." (Doc. 85 at 4). However, plaintiff does not expressly allege in the verified complaint or elsewhere that raw sewage came into his cell through the toilet or under his door. (Doc. 3). Nor has plaintiff cited any evidence that contradicts defendants' evidence on this issue and raises a genuine factual question as to whether raw sewage entered his cell. Instead, plaintiff contends that Mahlman referred to water coming from "showers" and "toilets" into "cells" in her report and did not single out his cell as remaining dry, which is proof that the sewage water breached his cell.[3] (Doc. 85 at 4, citing Doc. 85-1 at 3, Exh. A-3). Mahlman's general references to flooded "cells" and inmate "toilets" are insufficient to create a genuine issue as to whether plaintiff's cell

---

[2] *See* https://www.spartanchemical.com/products/product/351602#packaging-variations.

[3] Mahlman stated: "J4 showers on the I-20 range began flooding which later flooded inmate's cells. Water then began coming up out of the inmates (sic) toilets and the range was then flooded. . . ."

remained dry. Plaintiff must produce evidence to make an affirmative showing that the sewage

water intruded into his cell, which he has failed to do. *See Alexander v. CareSource*, 576 F.3d

551, 558 (6th Cir. 2009) (after the movant identifies portions of the record that demonstrate the

absence of a genuine dispute over material facts, the opposing party "then may 'rely on the hope

that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an

affirmative showing with proper evidence in order to defeat the motion") (quoting *Street*, 886

F.2d at 1479). Absent such evidence, there is no genuine dispute on this issue and defendants'

evidence that plaintiff's cell remained dry during the sewage incident must be accepted for

purposes of the summary judgment motion.

      *iii.*    *The clean-up process*

      The parties dispute whether SOCF staff properly cleaned up and decontaminated the area

affected by the sewage overflow. Defendants contend the backup was cleaned by inmate porters

and "reasonably attended to by SOCF staff." (Doc. 86 at 2). Defendants rely on numerous

exhibits to support their contention, including defendant Mahlman's report of her investigation.

(Doc. 65-4, Exh. D at 1). Plaintiff relies on clips of the video footage and inmate "declarations"

in support of his contention that proper procedures were not followed in the course of the sewage

cleanup. (Doc. 85-2, Exhs. C, D). Plaintiff asserts in the verified complaint that the inmates

were not supplied with any provisions to clean their cells, they were not offered showers for

decontamination purposes, and inmate clothing and possessions that were exposed to the

contaminants were not replaced. (Doc. 3 at 9).

      The video clips shed little light on the adequacy of the clean-up process. Further, the

"declarations" plaintiff has submitted are not admissible evidence which can be considered on

summary judgment because they do not comply with 28 U.S.C. § 1746. Under the statute, "'unsworn declarations under penalty of perjury'" may be used with the same force and effect to support, evidence, establish, or prove any matter that is required or permitted to be supported by an affidavit." *Stewart v. Wilkinson*, No. 2:03-cv-0687, 2009 WL 1322307, at *2 (S.D. Ohio May 8, 2009) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002)). However, unsworn declarations must substantially conform to the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." *Id.*; 28 U.S.C. § 1746(2). Neither the "declarations" of plaintiff or other inmates which plaintiff has submitted in response to defendants' motion for summary judgment substantially comply with this language. (*See* Doc. 85-2, Exh. D at 27-44). Thus, the declarations are not admissible for summary judgment purposes.

It is not clear from defendants' evidentiary submissions whether SOCF staff who were on site at the time of the sewage overflow responded properly to the incident. Defendants' submissions indicate that repairs were made that same day and a disinfectant was used in the clean-up. (Doc. 65-4, Exh. D at 2, Mahlman report). However, bleach was not used in the clean-up until February 18, 2016, when Holdren returned to work and ordered that the area be cleaned with bleach. (Doc. 85-1 at 1, Exh. A-1). Mahlman determined as part of her investigation into the incident that "bio-carts" with bleach should have been utilized immediately. (Doc. 65-8, Exh. H at 20-21, Interrogatory Response No. 3). This evidence indicates that the SOCF staff who were on-site at the time of the sewage overflow failed to comply with proper procedures for cleaning up a sewage spill. It does not raise a factual issue as to whether any of the defendants before the Court failed to properly respond to the sewage overflow.

*iv.*    *Alleged denial of medical care*

Plaintiff alleges that he was denied proper medical attention following the sewage spill.

Plaintiff generally alleges that he and the other inmates housed in J-4 were subjected to

"imminent dangers of serious physical harm by exposures to possible contractions of infectious

disease," including by having to consume all three meals of the day "while residing in standing

raw sewage and bio-hazard contaminates." (Doc. 3 at 9). Plaintiff contends that the medical

department did not provide proper medical attention or testing as required when an individual is

exposed to bio-hazardous contaminates. (*Id*.).

Defendants deny that they did not provide needed medical care to plaintiff. Defendants

assert that plaintiff availed himself of medical assistance but the medical staff determined that he

had no medical condition. (Doc. 65 at 7, 17-19; Doc. 65-6, Exh. F).

Medical records show that plaintiff was seen by medical staff and requested medical

testing on May 18, 2016, due to range flooding on February 13, 2016. (Doc. 65-6, Exh. F at 3).

Plaintiff requested testing because he thought he had been exposed to infectious diseases. (*Id*.).

He denied any specific complaints or symptoms. Plaintiff was referred for testing by the nurse,

who noted she had no knowledge relative to infectious diseases. (*Id*.). A battery of tests was

conducted and plaintiff was educated on the unlikelihood of exposure due to the fact that none of

the 40 people exposed had reported symptoms. (*Id*. at 5-6). Plaintiff was not diagnosed with any

condition or symptoms that could be tied to the sewage incident. (*Id*. at 3-7). Plaintiff has not

submitted any other evidence to show he was injured as a result of the February 13, 2016 sewage

overflow and that defendants ignored or denied his requests for medical care related to any

alleged injury.

9

IV.    **Defendants are entitled to summary judgment**

Defendants move for summary judgment on the grounds there is no genuine issue of

material fact as to whether plaintiff has presented an Eighth Amendment claim against

defendants, defendants are entitled to qualified immunity from liability, and plaintiff cannot hold

defendants liable under the theory of *respondeat superior*.

1.    **Conditions of confinement**

The Eighth Amendment requires prison officials "to provide humane conditions of

confinement." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994).  However, "[n]ot every unpleasant

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment

within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir.

1987).  Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food,

medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond

v. Settles,* 450 F. App'x 448, 455-56 (6th Cir. 2011) (quoting *Rhodes v. Chapman,* 452 U.S. 337,

348 (1981)).  To establish an Eighth Amendment violation, a plaintiff must first demonstrate

objectively the unique deprivation of "the minimal civilized measure of life's necessities." *Id.* at

454 (quoting *Rhodes,* 452 U.S. at 347).  He then must subjectively show the defendant acted

"wantonly," with "deliberate indifference to the plaintiff's serious needs." *Id.* at 455 (citing

*Farmer,* 511 U.S. at 834).

"Conditions-of-confinement cases are highly fact-specific, but one guiding principle is

that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x

204, 209 (6th Cir. 2017) (citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("In

general, the severity and duration of deprivations are inversely proportional, so that minor

deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration.") (quotation omitted)). *See also Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months.").

This Court previously held that another prisoner's complaint about the same sewage overflow at SOCF that led to this lawsuit did "not trigger any constitutional concerns about the denial of the minimal civilized measure of life's necessities, including sanitation." *Park v. Holdren*, No. 1:17-cv-439, 2018 WL 1901798, at *3 (S.D. Ohio Apr. 20, 2018), (Report and Recommendation), *adopted,* 2018 WL 3648234 (S.D. Ohio Aug. 1, 2018). The Court dismissed inmate Park's complaint that "he was subjected to the unsanitary conditions of his cell for 12 hours" for failure to state an Eighth Amendment claim after conducting the following review of similar cases:

> Where a prisoner alleged he was placed in a cell covered in fecal matter and forced to remain there for three days because he questioned why he was being required to submit a DNA sample, the Sixth Circuit determined that the inmate sufficiently stated a claim for relief under the Eighth Amendment. *See Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012); *see also Braswell v. Corrections Corp. of America*, 419 F. App'x 622, 627 (6th Cir. 2011) (finding an Eighth Amendment issue of fact in a § 1983 action where for nine months, the prisoner had been left in a filthy, disgustingly unsanitary cell where mold grew in the toilet and the cell floor was littered with food trays); *DeSpain*, 264 F.3d at 974 (thirty-six hour period of exposure to non-working toilets and other inmates' urine and feces via standing water was sufficiently serious).
>
> On the other hand, the Sixth Circuit and other courts have held that a temporary exposure to human waste does not meet the objective component of the Eighth Amendment. *See Lamb*, 677 F. App'x at 209-10 (inmate's four-hour exposure to human waste due to flooded toilet water insufficient to state Eighth Amendment violation); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (flooded cell and inoperable toilet were temporary inconveniences that did not

11

violate Eighth Amendment); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but suffered no physical harm); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (finding no Eighth Amendment violation where inmate was confined for 48 hours in a filthy cell, with inadequate lighting and ventilation, and unappetizing food); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) (deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *Wiley v. Kentucky Dep't of Corr.*, No. Civ. 11-97, 2012 WL 5878678, at *5-6 (E.D. Ky. Nov. 21, 2012) (inmate's "alleged exposure to the overflowing toilet and resulting odors, while no doubt unpleasant, was of short duration-one day-and did not amount to an Eighth Amendment violation").

*Park*, 2018 WL 1901798, at *3. Based on these decisions, the Court concluded that "[s]imilar to the inmates who suffered only a temporary exposure to flooded cell conditions, plaintiff's exposure was temporary and was not sufficiently serious to meet the objective component of the Eighth Amendment." *Park*, 2018 WL 1901798, at *3.

The facts presented here compel the same result. The evidence submitted by the parties in this case, construed in plaintiff's favor, leads to the conclusion that plaintiff's temporary exposure to the conditions created by the sewage overflow does not trigger any constitutional concerns about the denial of the minimal civilized measure of life's necessities, including sanitation. This is true regardless of whether the sewage water breached plaintiff's cell. The evidence shows that plaintiff was subjected to the unsanitary conditions created in the J-4 unit by the sewage overflow for a period of no more than 16 hours. (Doc. 3 at 9). Plaintiff's exposure was temporary and was not sufficiently serious to meet the objective component of the Eighth Amendment. The overflow happened at 4:00 a.m., Setty reported that porters and staff were mopping and cleaning the range where plaintiff was located on the morning of the incident, and Mahlman reported that the area was cleaned with "wet vac's" and "256." (Doc. 65-4, Exh. D at

12

2; Doc. 65-1, Exh. A, Setty Aff., ¶ 9).  Plaintiff's brief exposure to the conditions that existed at

SOCF on February 13, 2016 does not satisfy the objective component of the Eighth Amendment.

### 2.  The individual defendants' alleged liability under the Eighth Amendment

In addition to failing to produce evidence sufficient to create a genuine issue regarding

the conditions of his confinement, plaintiff has not produced sufficient evidence to hold the

individual defendants liable for the alleged violation of his Eighth Amendment rights.  A

supervisory official cannot be held liable under § 1983 on the basis of *respondeat superior*.

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County,* 668

F.2d 869, 874 (6th Cir. 1982)).  A "supervisory official's failure to supervise, control or train the

offending individual is not actionable unless the supervisor 'either encouraged the specific

incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff

must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced

in the unconstitutional conduct of the offending officers."  *Id.* (quoting *Hays,* 668 F.2d at 874).

Liability under § 1983 cannot be based solely on the right to control employees or on "simple

awareness of employees' misconduct."  *McQueen v. Beecher Community Schools*, 433 F.3d 460,

470 (6th Cir. 2006) (quoting *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v.*

*Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).  Liability under § 1983 is premised on active

unconstitutional behavior and not a mere failure to act.  *Greene v. Barber*, 310 F.3d 889, 899

(6th Cir. 2002).

Plaintiff seeks to hold Holdren liable in his supervisory capacity.  Plaintiff alleges in the

complaint that Holdren is "charged with the responsibility of ensuring the operations of [SOCF]

remain in compliance with O.D.R.C. [Ohio Department of Rehabilitation and Correction] policy

and safety/sanitation specification," and that Holdren intentionally fails to uphold his assigned

obligations "by being deliberately indifferent to unconstitutional conditions." (Doc. 3 at 7).

Plaintiff has not alleged, and has not produced evidence to show, that Holdren was actively

involved in the claimed violation of plaintiff's rights in connection with the sewage incident or

that Holdren knowingly authorized or approved the unconstitutional conduct of individuals under

his supervision.

The record does not include evidence that creates an issue as to whether Holdren was

deliberately indifferent to plaintiff's conditions of confinement. There is no dispute that

defendant Holdren was on extended medical leave on February 13, 2016, and he was not present

at SOCF on the day of the sewage overflow. (Doc. 65 at 14-15; Doc. 65-8, Exh. H at 3,

Interrogatory Response No. 2). It is also undisputed that Holdren did not return to work from

medical leave until February 18, 2016. (*Id*., Exh. H at 4, Interrogatory Response No. 5). Rather

than supporting plaintiff's claim of deliberate indifference against Holdren, the evidence shows

that Holdren actually took prompt and reasonable measures to abate the sewage overflow

problem when he was made aware of it upon his return to work. Holdren issued an Incident

Report in his capacity as SOCF Health and Safety Coordinator when he returned to work from

medical leave on February 18, 2016. (Doc. 85-1 at 1, Exh. A-1). Holdren reported he had

received a "kite" on the morning of his return about a flooding incident on the J-4 range. (*Id*.).

Holdren reported that he investigated the complaint and found that the sewage drain had flooded

at approximately 4:00 a.m. on February 13, 2016; a plumber was notified and came to SOCF to

make repairs; all standing water was removed by use of a shop vac; and the plumber finished at

approximately 7:00 p.m. on February 14, 2018. (*Id*.). Holdren reported that a "[b]io-Cart

14

(bleach)" was not used to disinfect the area after the water was cleaned up. (*Id.*). After receiving

the kite, Holdren immediately ordered that a bio-cart be sent to the block and a bio-porter was

instructed to clean the entire area with bleach. (*Id.*). Mahlman noted in the report of her

investigation that Holdren had the porters clean the J-4 unit with bleach when he investigated the

matter upon his return to work on February 18, 2016. (Doc. 65-4, Exh. D at 1). Evidence

showing that Holdren promptly responded to the sewage overflow once he returned to work and

was informed about the matter demonstrates that Holdren was not deliberately indifferent to

plaintiff's conditions of confinement. Plaintiff's claim against Holdren fails to meet the

subjective component of the Eighth Amendment.

Likewise, to the extent plaintiff may be claiming that defendant Holdren was deliberately

indifferent to a serious medical condition that he incurred as a result of the sewage overflow, the

evidence does not support a claim against Holdren under the Eighth Amendment. To show a

denial of medical care under the Eighth Amendment, a prisoner "must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs." *See Estelle v.

Gamble*, 429 U.S. 97, 106 (1976); *Comstock v. McCraty*, 273 F.3d 693, 702 (6th Cir. 2001).

Plaintiff does not claim that he suffered any injury as a result of the sewage overflow, that he

informed Holdren of a serious medical condition, or that he submitted a request for medical care

to Holdren. Even if Holdren was aware that plaintiff suffered from a serious medical condition

that required medical care, plaintiff has not introduced evidence to show Holdren took any action

to prevent plaintiff from seeking medical attention from the medical staff. In fact, the evidence

indicates that Holdren took affirmative steps to ensure that plaintiff and other inmates potentially

affected by the sewage incident received any necessary medical treatment. Holdren states in his

Incident Report, and plaintiff does not dispute, that he provided the names of inmates requesting medical evaluation to the Institution Inspector and advised inmates to sign up for sick call to be tested if recommended by the medical staff. (Doc. 85-1 at 1, Exh. A-1). Thus, there is no genuine issue of fact as to whether defendant Holdren showed deliberate indifference to a serious medical need under the Eighth Amendment.

Plaintiff likewise seeks to hold defendants Mahlman, Cool and Cadogan liable under the theory of *respondeat superior* for the actions of other SOCF employees. Plaintiff alleges in the complaint that these individuals are charged with the responsibility of supervising operations and services of SOCF and ensuring that SOCF complies with O.D.R.C. policy. (Doc. 3 at 7). Plaintiff generally claims that each defendant is deliberately indifferent to constitutional violations and deprivations. (*Id.*). Plaintiff does not allege, and has not introduced any evidence to show, that these defendants were actively involved in the claimed violation of his Eighth Amendment rights or that they knowingly authorized or approved the unconstitutional conduct of individuals under their supervision. There is no dispute that defendant Mahlman was not even at SOCF on the date of the sewage overflow. (Doc. 65-8, Exh. H at 20, Interrogatory Response No. 2). Plaintiff has not introduced evidence to show that Mahlman nonetheless had a role in the alleged violation of his constitutional rights by SOCF employees.

Further, the undisputed evidence shows that Mahlman took affirmative action to investigate the incident once she was informed about it. She investigated the overflow and identified two policies that were not followed: (1) although the officers contacted maintenance and inmate porters to resolve the matter, the officers should have also written a "DRC 1000" (incident report); and (2) bio carts with bleach should have been utilized immediately. (Doc. 65-

16

8, Exh. H at 20-21, Interrogatory Response No. 3). Mahlman also granted a grievance filed by plaintiff, which resulted in a report and recommendation to the warden. (Doc. 65-4, Exh. D at 2).

Similarly, plaintiff does not dispute defendant Cool's contention that he was not working at SOCF on the day of the sewage overflow. (*See* Doc. 65 at 15-16, citing Doc. 65-8, Exh. H at 10, Interrogatory Response No. 1). Instead, plaintiff apparently premises his claim against Cool solely on Cool's position as the department head who oversees security and unit management operations. (*See Id.*, Interrogatory Response No. 2). This is not a sufficient basis for imposing liability on Cool. There is no evidence that Cool had any direct role in the sewage overflow or that he acquiesced in or approved the unconstitutional conduct of an SOCF employee under his supervision.

Plaintiff likewise does not dispute defendant Cadogan's assertion that he does not work on weekends and was not at SOCF on the date of the sewage overflow. (Doc. 65 at 15-16, citing Doc. 65-8, Exh. H at 15, Interrogatory Response No. 1). There is no evidence that Cadogan was directly involved in the spill, or that Cadogan had knowledge of or acquiesced in any unconstitutional conduct of SOCF employees related to the spill.

To the extent plaintiff may be alleging that defendants Mahlman, Cadogan and Cool were deliberately indifferent to a serious medical condition as a result of the sewage overflow, the evidence does not support such a claim for the reasons discussed above. Plaintiff does not allege that he informed these defendants of a serious medical condition. *See Estelle*, 429 U.S. at 106; *Comstock*, 273 F.3d at 702. In fact, the evidence shows that plaintiff complained only about the potential health threat posed by the exposure to raw sewage and defendants' alleged inaction in response to his complaints of potential harm. In a grievance submitted to Mahlman on February

17

22, 2016, plaintiff complained about a health and safety threat posed by the possibility of contracting infectious disease. (*See* Doc. 85-1 at 2, Exh. A-2). Plaintiff sent kites to both Cool and Cadogan on March 26, 2016 complaining about this health threat. Plaintiff complained to Cadogan that no action had been taken by the medical department. (Doc. 85-1 at 43-44, Exh. B-5). Plaintiff complained to Cool of inaction by the medical and other departments and asked when he was going to take the proper action to ensure "the responsible departments act accordingly. . . ." (Doc. 85-1 at 41-42, Exh. B-4). Plaintiff filed a grievance with Cadogan on May 24, 2016, complaining of continuing "deliberate medical indifference" in connection with the February 13, 2016 sewage spill. (Doc. 85-1 at 65, Exh. B-12). Plaintiff did not advise defendants that he was suffering from a serious medical condition resulting from the sewage spill in any of complaints.

Nor has plaintiff introduced any evidence to show that defendants acted to prevent plaintiff from seeking medical attention from members of the medical staff. Plaintiff appears to claim only that defendants Mahlman, Cadogan and Cool failed to grant his grievances and investigate his complaints of deliberate indifference to his medical needs. Although plaintiff was not satisfied with defendants' responses to his complaints, he cannot premise his Eighth Amendment claim on his dissatisfaction with defendants' responses to his grievances and their investigation of his complaints. Plaintiff has no federal constitutional right to an effective prison grievance procedure. *See, e.g., Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11-

18

cv-362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Report and Recommendation) (finding that prisoner "has no constitutional right to an effective grievance procedure"), *adopted*, 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (citing cases). Further, "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). Thus, the evidence does not create a genuine factual issue as to whether defendants Mahlman, Cadogan or Cool were deliberately indifferent to a serious medical need stemming from plaintiff's exposure to raw sewage for a period of up to 16 hours on February 13, 2016. Defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim.

### 3. Eleventh Amendment Immunity and Qualified Immunity

Plaintiff's complaint against defendants in their official capacity must be dismissed to the extent he seeks monetary damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139 (1993); *Edelman v. Jordan,* 415 U.S. 651 (1974). The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio,* 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but the action is essentially one for the recovery of money from the state. *Edelman,* 415 U.S. at 663. A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690

(1978). Thus, actions against state officials in their official capacities are included in this bar.
*Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70-71 (1989). *See also Cady v. Arenac Co.,*
574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed
to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.")
(citation and ellipsis omitted)). Therefore, defendants are immune from suit in their official
capacity.

Defendants are also entitled to qualified immunity. Qualified immunity protects
government officials performing discretionary functions "from liability for civil damages insofar
as their conduct does not violate clearly established statutory or constitutional rights of which a
reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a
defendant raises a qualified immunity defense, the plaintiff must satisfy a two-pronged analysis:
(1) did the officer's conduct violate a constitutional right, and (2) if the first step is satisfied, was
the right clearly established at the time of the injury? *Saucier v. Katz*, 533 U.S. 194, 201 (2001),
*overruled in part, Pearson v. Callahan*, 555 U.S. 223 (2009). As the Court determines that the
facts are not sufficient to establish a violation of plaintiff's Eighth Amendment rights, defendants
are entitled to qualified immunity.

20

**IT IS THEREFORE ORDERED THAT:**

1.    Plaintiff's motion for leave to file an opposing memorandum that exceeds the page limit

(Doc. 84) is **GRANTED.**

**IT IS THEREFORE RECOMMENDED THAT:**

1.    Defendants' motion for summary judgment (Doc. 65) be **GRANTED**.

2.    The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an

appeal of this Court's Order would not be taken in good faith.  *See McGore v. Wrigglesworth*,

114 F.3d 601 (6th Cir. 1997).


Date: 2/20/19

Karen L. Litkovitz
United States Magistrate Judge

21

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JEREMY GALLANT,                                        Case No. 1:16-cv-383
    Plaintiff,

                                            Dlott, J.
    vs                                                 Litkovitz, M.J.

MR. HOLDREN, *et al.*,
    Defendants.


### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

22